**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**EDWIN WILLIAMS, on behalf of himself and all others similarly situated,**

**DOCKET NO.**

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

**Plaintiff,**

**-v.-**

**ADINA DESIGN, INC. d/b/a ADINA REYTER,**
**Defendant.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff **EDWIN WILLIAMS** ("Plaintiff" or "Mr. Williams"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, Robert L. Schonfeld, Esq. of Joseph & Norinsberg LLC, brings this action against **ADINA DESIGN, INC. d/b/a ADINA REYTER** ("Adina Reyter" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, arising from Defendant's failure to design, construct, maintain, and operate its e-commerce website, www.adinareyter.com, in a manner that is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff Edwin Williams is a resident of New York County and is permanently disabled due to advanced Retinitis Pigmentosa ("RP"), a progressive degenerative disease of the retina that destroys the photoreceptor cells responsible for converting light into visual signals. The condition has caused severe and permanent constriction of his visual field — commonly described as "tunnel vision" — that has progressed to the point of legal blindness. Mr. Williams's ability to discern shapes, navigate environments, or interpret digital content is profoundly and permanently

impaired, and his condition qualifies as a disability within the meaning of 42 U.S.C. § 12102(1)-(2). Exhibit A.

2. As a legally blind individual, Mr. Williams relies exclusively on screen-reading software and keyboard navigation to access digital content independently. He is a proficient user of NonVisual Desktop Access ("NVDA") screen reader software, which he relies upon daily to browse the Internet, conduct research, communicate, and shop online. Because he cannot visually interpret website content, he depends on websites to provide proper semantic structure, meaningful alternative text, labeled interactive elements, and screen-reader-compatible navigation. For Mr. Williams, accessible coding is not optional — it is the only means by which he can access the Internet independently.

3. In early 2026, Mr. Williams sought to independently browse and purchase fine jewelry as a gift for his partner, with whom he recently became engaged. He sought to purchase two specific items from Defendant's website, www.adinareyter.com: (1) the iconic Circle Necklace in 14k Yellow Gold — the original design from which Adina Reyter's entire brand was built, and which is not available in its precise form from any other brand or retailer; and (2) the 2 Diamond Petal Posts (Lab Grown) — a signature fine jewelry earring featuring lab-grown diamonds, priced at $2,498.00. Mr. Williams selected these items specifically because of Adina Reyter's unique brand identity as a Los Angeles-based fine jeweler whose collections are built on personal storytelling and craftsmanship, and because the specific designs he sought — rooted in the brand's founding history — are not replicated or replicable elsewhere. No other comparable fine jewelry retailer offers these specific designs at a comparable quality and price point.

4. According to the United States Census Bureau, millions of Americans live with significant visual impairments, including more than two million who are legally blind. Congress

enacted the ADA to eliminate discrimination against individuals with disabilities and ensure full integration and equal access. The Department of Justice has repeatedly affirmed that the ADA applies to the goods, services, and activities offered by public accommodations on the web.

5. The Internet has become an indispensable tool for modern life. It is a primary means of shopping, banking, learning, communicating, and accessing essential goods and services. For blind and visually impaired individuals, equal access to websites is critical to participating in society on equal terms. When websites are not designed to be compatible with screen-reading software, blind users are excluded from the digital marketplace and denied the independence that sighted users take for granted.

6. Screen-reading software works by converting digital content into synthesized speech or refreshable Braille. For this technology to function, website content must be capable of being rendered into text. Websites that lack alternative text for images, contain unlabeled buttons or links, use improper heading structure, rely on mouse-only interactions, or contain broken ARIA references cannot be interpreted by screen readers. As a result, blind users cannot navigate, understand, or interact with such websites, and are denied equal access to the goods and services offered.

7. The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal access under the ADA.

8. Plaintiff brings this civil action against Adina Design, Inc. d/b/a Adina Reyter, the

operator of www.adinareyter.com, for its failure to design, construct, maintain, and operate its highly interactive retail e-commerce platform in a manner that is fully accessible to blind and visually impaired individuals. Defendant's denial of full and equal access to its Website — and therefore to the goods and services offered therein — constitutes a violation of Plaintiff's rights under Title III of the ADA.

9. On January 15, 2026, February 20, 2026, and March 28, 2026, Plaintiff attempted to access Defendant's Website using screen-reader technology to research and purchase the Circle Necklace in 14k Yellow Gold and the 2 Diamond Petal Posts (Lab Grown). He attempted to review product descriptions, available metal and length options, pricing, and shipping information before completing a purchase.

10. Despite multiple attempts across these three dates, Plaintiff was unable to independently complete his objectives due to pervasive access barriers. Automated SortSite accessibility audits conducted on the Website revealed multiple WCAG 2.1 Level A and Level AA violations across numerous pages of www.adinareyter.com — including missing or inadequate alternative text on product imagery, links without accessible names, empty interactive controls, inaccessible color and metal swatch selectors, and improperly structured navigational elements. These technical defects manifested in concrete barriers for Plaintiff: product images for the Circle Necklace and the 2 Diamond Petal Posts were rendered without meaningful alternative text, depriving him of any information about the jewelry's design, metal, or finish; swatch selectors for chain length and metal type were unlabeled, preventing independent customization before purchase; and empty or non-descriptive interactive links caused NVDA to announce only "link" or "blank" with no context, preventing Plaintiff from navigating product collections or proceeding to checkout.

11. The accessibility barriers were systemic and not limited to isolated pages. The SortSite accessibility validation audit, broken link report, and quality report collectively confirm that Defendant's Website contains accessibility violations at multiple WCAG 2.1 levels across numerous pages of www.adinareyter.com — rendering the Website incompatible with screen-reader technology and WCAG 2.1 AA standards.

12. What makes Defendant's conduct particularly egregious is that Adina Reyter maintains a publicly accessible Accessibility Statement on its Website at adinareyter.com/pages/accessibility-statement, in which it expressly represents that it is committed to WCAG 2.1 Level A and AA conformance and has engaged Level Access, a professional accessibility consulting firm, to govern its accessibility program. Notwithstanding these public representations and its retained professional guidance, Defendant's Website continues to present the documented barriers described herein, which are irreconcilable with the claimed standard of WCAG 2.1 AA conformance. This gulf between Defendant's public representations and the actual state of its Website demonstrates knowing and willful disregard for the rights of blind consumers.

13. Defendant operates a retail e-commerce platform through which consumers can browse fine jewelry, review product-specific information, select metal type, chain length, and other customization options, and purchase items directly online. Plaintiff specifically sought out Defendant because of its singular brand identity and design heritage — in particular, the Circle Necklace, a design that originated in the founder's Los Angeles apartment and has become synonymous with the Adina Reyter brand, and the 2 Diamond Petal Posts, a signature lab-grown diamond earring that reflects the brand's commitment to accessible luxury fine jewelry. These specific designs are not available from any other retailer. This is precisely why Mr. Williams chose www.adinareyter.com over other online fine jewelry retailers: the unique origin, design language,

and craftsmanship of Defendant's jewelry are not replicable elsewhere.

14. Upon information and belief, Defendant had prior notice of its website accessibility failures through, at minimum, its engagement of Level Access as an accessibility consulting partner and through the public representations made in its Accessibility Statement. Notwithstanding such notice and such representations, Defendant has failed to meaningfully remediate its Website. Defendant's continued operation of a Website containing WCAG 2.1 violations — after publicly claiming compliance and retaining professional guidance — constitutes a willful and deliberate disregard of its obligations under federal, state, and local law.

15. Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate policies, practices, and procedures to ensure that www.adinareyter.com becomes and remains accessible to blind and visually impaired users. Without remediation, Plaintiff and other blind consumers remain excluded from equal participation in Defendant's online marketplace.

**JURISDICTION AND VENUE**

16. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

17. This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

18. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in New York County, accessed Defendant's Website, www.adinareyter.com, from within this District, and experienced the discriminatory barriers alleged herein in this District. Courts in this Circuit have repeatedly held that venue is proper where a plaintiff encounters website accessibility barriers. *See Velazquez v. Don Roberto Jewelers, Inc.*,

No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.) (venue proper where plaintiff encountered website barriers in the district); *see also Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

19. Defendant is subject to personal jurisdiction in this District because it purposefully directs business activities toward New York consumers through its highly interactive e-commerce Website, www.adinareyter.com, which allows users to browse fine jewelry collections, review product information, select metal and length options, create accounts, and complete purchases. Defendant ships products directly to New York residents and derives substantial revenue from sales to consumers in this State. Defendant's jewelry is sold through major retail partners including Nordstrom and Bloomingdale's — both of which operate prominent flagship locations in New York City — further confirming Defendant's purposeful availment of this forum. *See Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

20. The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements apply to all services offered by public accommodations, including those offered online.

21. This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## <u>THE PARTIES</u>

22. Plaintiff Edwin Williams is, and at all relevant times was, a resident of New York County, New York. Mr. Williams is legally blind and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)--(2), its implementing regulations at 28 C.F.R. §§ 36.101 *et seq.*, and the protections afforded under New York State and

New York City law. Mr. Williams suffers from advanced Retinitis Pigmentosa, a permanent degenerative retinal condition that causes severe progressive constriction of the visual field, resulting in legal blindness. His condition requires the use of screen-reading software to access digital content independently.

23. Plaintiff is a proficient user of screen-reader technology, including **NVDA**, and relies on keyboard navigation and accessible coding to browse, understand, and interact with websites. Because he cannot visually interpret printed or digital information without assistive technology, Mr. Williams depends on businesses to design, construct, and maintain their websites in a manner that is compatible with screen-reading software.

24. For Mr. Williams, accessible online shopping is essential to his independence and to his ability to care for the needs of his family and loved ones. As a legally blind consumer, he cannot visually browse retail stores or product displays without assistance. He therefore relies heavily on accessible e-commerce websites to research, evaluate, and purchase products — including fine jewelry gifts for his partner. Defendant's platform was uniquely positioned to serve those needs given its singular design heritage and its exclusive fine jewelry offerings. When websites lack proper alternative text, labeled controls, or navigable structure, Mr. Williams is unable to obtain the same information available to sighted shoppers and is denied equal access to the digital marketplace.

25. Upon information and belief, **Adina Design, Inc.** is a corporation organized under the laws of the State of California, with its principal place of business at 14140 Ventura Boulevard, Suite 209, Sherman Oaks, California 91423. Defendant owns, operates, and controls the commercial retail e-commerce Website **www.adinareyter.com** (the "Website"), through which it markets, displays, and sells fine jewelry — including necklaces, earrings, rings, bracelets, anklets,

and charms in 14k gold, sterling silver, diamonds, lab-grown diamonds, pearls, and gemstones — to consumers throughout the United States, including residents of New York. Defendant's jewelry is stocked at major national retailers including Nordstrom and Bloomingdale's, both of which operate flagship New York City locations through which Defendant's brand purposefully reaches New York consumers. Defendant derives substantial revenue from interstate commerce and transacts business within this District by offering its products for direct online purchase and shipment to New York consumers.

## STATEMENT OF FACTS

**Plaintiff's Attempts to Access Defendant's Website**

26. On January 15, 2026, February 20, 2026, and March 28, 2026, Plaintiff Edwin Williams attempted on three separate occasions o access Defendant's retail e-commerce Website, **www.adinareyter.com**, using the NVDA screen reader on his home computer in New York County. Plaintiff visited the Website for the specific purpose of browsing and purchasing fine jewelry as an engagement gift for his partner.

27. Plaintiff specifically sought to research and purchase two products: (1) the **Circle Necklace in 14k Yellow Gold** — the original, founding design of the Adina Reyter brand, first created by the designer from her Los Angeles apartment and not replicated in its precise form by any other brand or retailer; and (2) the **2 Diamond Petal Posts (Lab Grown)**, priced at $2,498.00 — a signature fine jewelry earring featuring lab-grown diamonds that is exclusive to the Adina Reyter collection. Mr. Williams chose these specific items because of their design heritage, their exclusive availability on www.adinareyter.com, and because no other online fine jewelry retailer offers comparable designs with the same provenance, craftsmanship, and price-to-quality ratio. He chose **www.adinareyter.com** over other fine jewelry websites — including Mejuri, Monica Vinader, and Missoma — specifically because only Adina Reyter offers these exact designs in the

specific combination of metal, cut, and finish that his partner desires, and because Defendant's brand identity as a Los Angeles-based, founder-designed everyday fine jewelry label is uniquely important to the meaning of the gift.

28. Plaintiff attempted to review product names, descriptions, available metal and chain-length options, customization choices, pricing, and shipping information. He also attempted to use the Website's filter and sort controls to navigate the jewelry collections and identify the specific items he desired. However, the SortSite accessibility validation audit of www.adinareyter.com identified multiple WCAG 2.1 Level A violations across numerous pages of the Website. These technical defects manifested in concrete barriers for Plaintiff:

Product images for the Circle Necklace in 14k Yellow Gold and the 2 Diamond Petal Posts (Lab Grown), as well as numerous other items throughout the collections, were rendered without meaningful alternative text — or with empty alternative attributes — causing NVDA to announce only "image" or the raw file name, depriving Plaintiff of any information about the jewelry's design, silhouette, metal, or finish.

Chain length and metal-type swatch selectors presented as unlabeled form controls, causing NVDA to announce only an empty or generic field prompt, preventing Plaintiff from independently selecting the desired metal and length options before adding items to his cart.

Links throughout the collection and product pages lacked any accessible name, causing NVDA to announce only "link" or "blank" with no contextual information as to the product, category, or destination, making it impossible to determine which item was being navigated to or what action a given link would perform.

Interactive buttons throughout the Website — including "Add to Cart" and product-card controls — were empty or inaccessibly labeled, causing NVDA's focus to produce no

meaningful audio output and preventing Plaintiff from understanding how to select items or proceed toward purchase.

The virtual styling tool, live chat widget, and other dynamic interactive elements presented accessibility barriers under keyboard navigation, further compounding Plaintiff's inability to independently access the full range of services offered on the Website.

Because of these barriers, Plaintiff could not reliably navigate the jewelry collections, could not identify or distinguish between the Circle Necklace and other necklace products, could not configure his desired chain length or metal type, and could not add any item to his cart or proceed toward purchase on any of the three occasions he attempted. Exhibit B

29. On each of the three dates, Plaintiff also attempted to access individual product pages for the Circle Necklace in 14k Yellow Gold and the 2 Diamond Petal Posts (Lab Grown), and encountered the same systemic barriers. The inaccessibility of product images, unlabeled size and configuration selectors, and empty interactive controls rendered the product pages equally unusable under NVDA, preventing Plaintiff from obtaining the product-specific information needed to make a purchase decision.

30. On each of the three dates, Plaintiff attempted in good faith to identify his desired products, evaluate available options and configurations, and complete a purchase for his partner. Because the Website lacked accessible coding, Plaintiff was entirely unable to obtain the same information available to sighted users and could not complete a purchase on any of the three occasions he attempted.

**<u>Background and Reliability of SortSite</u>**

31. SortSite is a professional-grade website accessibility and quality testing tool developed by PowerMapper Software. It is widely used by web developers, accessibility consultants, government agencies, and legal practitioners to audit websites for compliance with

WCAG, Section 508, and other internationally recognized accessibility standards. SortSite performs automated multi-page scanning of entire websites, checking for violations at WCAG 2.1 Levels A, AA, and AAA. It is recognized across the accessibility community for its accuracy and breadth of coverage. SortSite's results are routinely relied upon by federal agencies, law firms, and accessibility practitioners as objective, reproducible evidence of a website's compliance posture. Notably, SortSite reports both the specific WCAG success criterion violated and the exact HTML line numbers on which violations occur, providing a level of technical specificity that further enhances the reliability and probative value of its findings.

**Defendant's Public Representations of Accessibility Compliance**

32. Adina Reyter maintains a publicly accessible Accessibility Statement on its Website at adinareyter.com/pages/accessibility-statement, in which Defendant expressly represents its commitment to achieving WCAG 2.1 Level A and Level AA conformance and describes its engagement of Level Access — a professional accessibility consulting and governance firm — to oversee its accessibility program. Defendant's Accessibility Statement further represents that it offers users the ability to engage an assistive CX technology application that provides, inter alia, voice recognition navigation, keyboard and mouse replacement tools, and hands-free browsing. These representations are public, express, and specific.

33. Notwithstanding these representations, the SortSite accessibility validation audit, broken link report, and quality report of www.adinareyter.com confirm the presence of multiple WCAG 2.1 Level A and Level AA violations across the Website. The documented barriers — including missing or inadequate alternative text on product images, links without accessible names, unlabeled form controls, and empty interactive elements — are directly inconsistent with WCAG 2.1 Level A conformance, the most basic tier of the standard. Defendant's engagement of a professional accessibility firm, combined with its public representation of compliance and its

continued operation of a Website containing Level A violations, demonstrates knowing and willful disregard for the rights of blind consumers.

**Systemic Barriers Confirmed by SortSite**

34. The SortSite accessibility validation audit of www.adinareyter.com identified multiple WCAG 2.1 Level A violations across numerous pages of the Website, including:

- Links without any accessible name (WCAG 2.1 A F89) — empty links with no accessible name are announced by NVDA simply as "link," rendering them completely meaningless to a blind user navigating by link list or sequential keyboard focus.
- Images missing adequate alternative text (WCAG 2.1 A 1.1.1) — product images lacking meaningful alt attributes cause NVDA to announce raw file names or nothing at all, depriving blind users of any information about the product's design, appearance, metal, or finish. On a fine jewelry website where the visual design of the product is the primary basis for a purchasing decision, this failure is particularly severe.
- Form controls lacking accessible labels (WCAG 2.1 A 1.3.1 / 4.1.2) — length selectors, metal-type pickers, and other customization controls lack programmatic labels, causing screen readers to announce only generic or empty prompts and preventing blind users from understanding or operating the controls.
- Interactive elements not keyboard accessible (WCAG 2.1 A 2.1.1) — dynamic interface elements including the virtual styling tool, swatch selectors, and promotional banners are not fully operable via keyboard alone, excluding blind and motor-impaired users who cannot use a pointing device.
- CSS heading styles applied to non-heading elements (WCAG 2.1 A F2) — use of visual styling to simulate heading structure without proper HTML heading markup deprives

blind users of the ability to use heading navigation — a primary screen-reader navigation strategy — to move efficiently through page content.

35. The SortSite scan also identified Level AA violations, including insufficient text/background color contrast (WCAG 2.1 AA 1.4.3) across multiple pages of www.adinareyter.com, further impairing the ability of low-vision users to perceive text content on the Website.

36. The SortSite broken link report identified broken and erroneous links across pages of www.adinareyter.com, further degrading the navigability and reliability of the Website for all users, including blind users who must rely on linked navigation paths to move between product categories and complete purchases. The SortSite quality report confirmed additional technical quality failures across the Website that compound the accessibility barriers documented in the accessibility validation audit.

37. These SortSite findings confirm that the barriers Plaintiff encountered on January 15, 2026, February 20, 2026, and March 28, 2026, were not isolated or temporary defects but rather the product of systemic design and coding practices that are fundamentally incompatible with screen-reader accessibility and irreconcilable with Defendant's public representations of WCAG 2.1 AA conformance.

**<u>Plaintiff's Concrete Injury and Intent to Return</u>**

38. Plaintiff's injuries are concrete, particularized, and ongoing. Plaintiff attempted to access Defendant's Website on three separate occasions for the specific purpose of purchasing fine jewelry for his partner. His shopping objectives were personal, particular, and tied to specific products he attempted to review.

39. Plaintiff remains highly interested in purchasing the **Circle Necklace in 14k Yellow**

**Gold** and the **2 Diamond Petal Posts (Lab Grown)** from Defendant and intends to return to the Website as soon as it is made accessible. His intent to return is credible because:

- He continues to desire these specific products — particularly because no other fine jewelry retailer offers the Circle Necklace in its original founder-designed form or the 2 Diamond Petal Posts in the same design and quality configuration.
- These specific products are exclusively available on www.adinareyter.com and through Defendant's retail partners; no independent purchase alternative exists for the precise items Mr. Williams seeks.
- He has no alternative means of independently evaluating these products or completing a purchase without an accessible Website.
- He has demonstrated a history of attempting to access the Website on three separate dates for the purpose of making a purchase.
- Pursuant to Calcano v. Swarovski North America Ltd., 36 F.4th 68 (2d Cir. 2022), Plaintiff's intent to return is not speculative — it is grounded in his specific, documented desire to purchase identified products that remain available on Defendant's Website, and his established pattern of attempting to access www.adinareyter.com on multiple occasions.

40. Defendant's ongoing operation of an inaccessible Website deters Plaintiff from attempting to use it again until it is remediated. Plaintiff's injury is ongoing because Defendant has no functioning policy or practice to ensure accessibility — as demonstrated by the continued presence of WCAG 2.1 Level A violations on the Website notwithstanding Defendant's public representations of compliance — and the barriers he encountered remain uncorrected.

41. Defendant's failure to design, construct, maintain, and operate its Website in a manner

compatible with screen-reader technology constitutes discrimination under Title III of the ADA. Defendant's inaccessible Website denies blind consumers equal access to the goods and services it offers to the general public and prevents blind users from participating in the digital marketplace on equal terms.

**CLASS ACTION ALLEGATIONS**

42. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of:

> All legally blind individuals in the United States who have attempted to access www.adinareyter.com and, as a result of Defendant's failure to design, construct, maintain, and operate the Website in an accessible manner, were denied equal access to the goods, services, and information offered thereon.

43. Plaintiff also seeks certification of a New York subclass consisting of:

> All legally blind individuals residing in the State of New York who have attempted to access www.adinareyter.com and were denied equal access to the goods, services, and information offered thereon.

44. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. Defendant operates a nationwide e-commerce platform and markets its fine jewelry to consumers throughout the United States. Upon information and belief, thousands of blind and visually impaired individuals have attempted to access the Website and have been denied equal access due to the systemic accessibility barriers confirmed by the SortSite audits.

45. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions

include, but are not limited to:

- Whether Defendant's Website contains accessibility barriers that prevent blind individuals from accessing its goods and services;
- Whether Defendant's failure to make its Website accessible violates Title III of the ADA;
- Whether Defendant's failure to maintain accessible digital content violates New York State and New York City disability rights laws;
- Whether Defendant's public representations of WCAG 2.1 AA conformance, combined with its continued operation of a Website containing Level A violations, constitutes knowing and willful discrimination against blind consumers; and
- Whether injunctive relief is warranted to require Defendant to bring its Website into actual compliance with WCAG 2.1.

46. Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class, is legally blind, uses screen-reading software, and was denied equal access to Defendant's Website due to the same systemic accessibility barriers identified in the SortSite reports.

47. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has retained counsel experienced in ADA litigation, class actions, and digital accessibility matters.

48. Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class as a whole. Defendant continues to operate an inaccessible Website without implementing the accessibility measures it has publicly committed to, thereby subjecting all blind users to the same discriminatory barriers.

49. Certification under Rule 23(b)(2) is appropriate because Defendant has failed to design, construct, maintain, and operate its Website in compliance with WCAG 2.1, and because Defendant's actions apply generally to all blind individuals who attempt to use the Website. Declaratory and injunctive relief is the only appropriate remedy to ensure equal access for Plaintiff and the Class.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 et seq.)**

50. Plaintiff Edwin Williams, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

51. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

52. Defendant's Website, www.adinareyter.com, is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

53. Defendant has failed to design, construct, maintain, and operate its Website in a manner that is fully accessible to blind and visually impaired individuals, in violation of Title III of the ADA and its implementing regulations.

54. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny

individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

55. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, *inter alia*:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)--(iii).

56. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)--(2)(A). Plaintiff has been denied full and equal access to Defendant's Website, www.adinareyter.com, has not been provided services that are provided to nondisabled patrons, and has been provided services that are inferior to those provided to nondisabled persons.

57. Defendant has failed to take any prompt or equitable steps to remedy the discriminatory conduct, and the violations are ongoing. Defendant's engagement of a professional

accessibility consulting firm and its public representations of WCAG 2.1 AA conformance, combined with its continued operation of a Website containing Level A violations, demonstrates knowing and willful discrimination against blind consumers. Defendant's continued operation of an inaccessible Website in the face of its own public accessibility commitments constitutes a willful and knowing violation of Title III of the ADA.

58. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section Prayer For Relief below.

## SECOND CAUSE OF ACTION
## (New York State Human Rights Law)
## ("NYSHRL")

59. Plaintiff, **Edwin Williams,** on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

60. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

61. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

62. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.adinareyter.com, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

63. Plaintiff has visited the Website on a number of occasions and has encountered

barriers to his access that exist.

64. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

65. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

66. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a Website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make the accessibility features of the Website known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full and equal access to the facilities, goods, and services that Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

67. The Defendant's discriminatory practice also includes "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services

because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

68. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is a well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

69. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

70. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

71. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

## THIRD CAUSE OF ACTION
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

72. Plaintiff, **Edwin Williams,** on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

73. Plaintiff served notice thereof upon the New York State Attorney General, as required

by N.Y. Civil Rights Law § 41. (Notice to Attorney General)

74. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

75. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

76. § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

77. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, www.adinareyter.com, is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

78. Defendant intentionally and willfully failed to remove the barriers on its Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

79. Defendant has failed to take any steps to halt and correct its discriminatory conduct and continues to discriminate against the Plaintiff and the Subclass members.

80. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby... in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id.*

81. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

## FOURTH CAUSE OF ACTION
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

82. Plaintiff, **Edwin Williams,** on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

83. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's ... disability ... directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

84. Defendant is subject to NYCHRL because it owns and operates the Website, www.adinareyter.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

85. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update

or remove access barriers to Defendant's Website, causing the services integrated therein to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

86. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities ... any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

87. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that it is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

88. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

89. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages,

accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

90. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

91. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

92. Plaintiff is also entitled to reasonable attorneys' fees and costs.

93. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
**(Declaratory Relief)**

94. Plaintiff, Edwin Williams, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

95. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that their Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

96. A judicial declaration is necessary and appropriate at this time so that each of the

parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182
  *et seq.*;
- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make www.adinareyter.com fully accessible to and usable by blind and visually impaired individuals, including through the adoption and maintenance of WCAG-conforming accessibility measures that bring the Website into actual, verifiable conformance with the standard Defendant has publicly claimed;
- A declaration that Defendant owns, maintains, controls, and/or operates its Website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;
- An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing his counsel as Class Counsel;
- Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under the New York City Human Rights Law, the New York State Human Rights Law, and the New York State Civil Rights Law;
- Pre-judgment and post-judgment interest;
- An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and
- Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
June 28, 2026

Respectfully submitted,
*/s/ Robert Schonfeld*
**Robert Schonfeld, Esq.**
Joseph & Norinsberg, LLC
825 Third Avenue, Suite 2100
New York, New York 10022
Tel.: (212) 227-5700
Fax: (212) 656-1889
rschonfeld@employeejustice.com
*Attorneys for Plaintiff and the Class*